IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CAMATIC PROPRIETARY LIMITED AND CAMATIC SEATING INC., | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:16-cv-0795-M |
| IRWIN SEATING COMPANY, | § § | |
| Defendant. | § § § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's Motion to Transfer Venue and Dismiss for Lack of Standing (ECF No. 37). For the reasons stated below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.  Factual & Procedural Background**

Plaintiff Camatic Proprietary Limited is an Australian company with its principal place of business in Australia. Plaintiff Camatic Seating Inc. is a Georgia corporation with its principal place of business in Farmers Branch, Texas, and is the wholly owned subsidiary of Camatic Proprietary (collectively, "Camatic"). Camatic Proprietary manufactures and installs seating systems for a range of uses, including professional sports events. Camatic Proprietary formed Camatic Seating after entering the U.S. market following the 1996 Summer Olympics. Defendant Irwin Seating Company is a family-owned company incorporated in Michigan with its principal place of business in Grand Rapids, Michigan.

Irwin produces seating and furniture for various facilities, including stadiums and theaters. On July 11, 2006, United States Patent No. 7,073,858 (the "'858 Seating System

1

Patent") was issued to inventors David and Adam Fisher, the co-owners of Camatic Proprietary, who assigned the entire right, title, and interest in the '858 Seating System Patent to Camatic Proprietary. On March 21, 2016, Camatic Seating and Camatic Proprietary filed this suit against Irwin, alleging that Irwin infringed the '858 Seating System Patent.[1] On February 10, 2017, Irwin moved to dismiss Camatic Seating for lack of standing, because at the suit's inception it was not an exclusive licensee of the '858 Seating System Patent, and to transfer the rest of the case to the Western District of Michigan.[2] The Court will address the standing issue first.

**II.     Analysis**

A.     Camatic Seating's Standing

A plaintiff in federal court must establish that, at the time of suit, it had standing under Article III of the Constitution. *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1308 (Fed. Cir. 2003). To demonstrate Article III standing, a plaintiff must prove: (1) injury in fact, or an invasion of a legally protected interest, (2) a causal connection between the injury and the conduct complained of, and (3) redressability by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing for patent infringement, a plaintiff "must demonstrate that it held enforceable title to the patent at the inception of the lawsuit." *Paradise Creations*, 315 F.3d at 1309. Exclusive licensees "may possess sufficient interest in the patent to have standing to sue as a co-plaintiff with the patentee." *Rite-Hite Corp. v. Kelley Co., Inc.* 56 F.3d 1538, 1552 (Fed. Cir. 1995) (en banc). To have standing as an exclusive licensee, a party "must have received, not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well." *Id*.

---

[1] (ECF No. 1).
[2] (ECF No. 38).

On December 31, 2015, Camatic Seating was administratively dissolved by the State of Georgia. Under Georgia law, a corporation that has been administratively dissolved continues its corporate existence, but may not carry on *any* business except that necessary to wind up and liquidate its business and affairs.[3] On March 6, 2016, two weeks before Plaintiffs filed their Complaint, Camatic Proprietary and Camatic Seating executed an agreement granting to Camatic Seating an exclusive license of the rights to the '858 Seating System Patent. On April 8, 2016, the State of Georgia reinstated Camatic Seating.

Irwin argues that under Georgia law, as a dissolved entity Camatic Seating could not execute an exclusive licensee agreement. As a result, Irwin argues that Camatic Seating did not have enforceable rights in the '858 Seating System Patent, either as a patentee or exclusive licensee, and that it therefore could not proceed as a plaintiff. Camatic Seating responds that it was inadvertently dissolved, due to a clerical error by the State of Georgia, and that the exclusive license is retroactively valid because of the reinstatement, which rendered the dissolution of Camatic Seating as if it had never occurred.[4]

Camatic's argument is undermined by the Federal Circuit's holding in *Paradise Creations*. In *Paradise Creations*, a Florida statute provided that "a corporation administratively dissolved continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs." 315 F.3d at 1308. In *Paradise Creations*, the State of Florida dissolved the plaintiff in August 1996, but in 1997, the plaintiff purported to enter into an exclusive licensing agreement. *Id*. at 1306. Based on that license, in

---

[3] O.C.G.A. § 14-2-1421(c). Under § 14-2-1405, activities allowed in winding up and liquidating business affairs include: collecting its assets, disposing of its properties that will not be distributed in kind to its shareholders, discharging or making provision for discharging its liabilities, distributing its remaining property among its shareholders according to their interests, and doing every other act necessary to wind up and liquidate its business and affairs.

[4] O.C.G.A. § 14-2-1422(d) (Georgia revival statute).

2000, the plaintiff filed a patent infringement suit. The plaintiff was reinstated in 2001. Under Florida law, the reinstatement "relates back to and takes effect as to the effective date of the administrative dissolution and the corporation resumes carrying on its business as if the administrative dissolution had never occurred." *Id*. at 1307. The Georgia law at issue here is virtually identical. The plaintiff in *Paradise* made the same "relates back" argument as Camatic Seating does here, but the Federal Circuit held that the Florida statute could not retroactively confer standing in federal court because the plaintiff "held no enforceable rights whatsoever in the patent at the time it filed suit, and therefore lacked a cognizable injury necessary to assert standing under Article III of the Constitution." *Id*. at 1310. The Court finds these facts essentially indistinguishable from those in *Paradise Creations*.[5] Camatic Seating was thus not an exclusive licensee as a result of the March 6 agreement, and therefore it did not have standing pursuant to that document.

Camatic Seating alternatively argues it has Article III standing as an implied exclusive licensee. It contends Camatic Proprietary gave it the exclusive right to practice the invention within the United States and made an implied promise that others would be excluded from practicing the invention within the territory. *See Rite-Hite*, 56 F.3d at 1552. Plaintiffs cite the following as evidence of an implied exclusive license: Camatic Proprietary is a family-owned business run by brothers David and Adam Fisher, and Camatic Seating is its wholly owned United States subsidiary.[6] Camatic Proprietary's business strategy is for Camatic Seating to operate in the United States seating market, as the sole company with permission to sell the subject matter of the '858 Seating System Patent in the United States.[7] Since 2007, Camatic

---

[5] The Court finds no evidence in the record to support Camatic Seating's claim that its dissolution by the State of Georgia was inadvertent.
[6] Declarations of Ken Griffiths, Adam Fisher, and David Fisher (ECF No. 45-2 at A2-A11).
[7] *Id*.

4

Seating has made seating sales to various American stadiums based on the '858 Seating System Patent. No others have done so. Irwin does not contest this evidence.

Based on this uncontested evidence, the Court finds Camatic Seating had an exclusive right to use the '858 Seating System Patent in the United States pursuant to an implied promise by Camatic Proprietary that nobody else could practice the invention within the United States. Therefore, Camatic Seating is an exclusive licensee and has Article III standing to bring this suit as a co-plaintiff with the patentee, Camatic Proprietary.

B.  Motion to Transfer Venue

Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to any other district or division where it might have been brought.[8] District courts are to adjudicate motions for transfer on an individualized, case-by-case basis. *Paragon Indus., L.P. v. Denver Glass Mach., Inc.*, 07-CV-2183-M, 2008 WL 3890495, at *1 (N.D. Tex. Aug. 22, 2008) (Lynn, J.). Although the Federal Circuit establishes patent law precedent, regional circuit law controls with respect to motions to transfer, even in patent cases. *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011).

In the Fifth Circuit, a district court is to grant transfer if the party seeking a change of venue has demonstrated that the transferee venue "is clearly more convenient" than the plaintiff's chosen venue. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (*Volkswagen II* ) (5th Cir. 2008) (en banc). The Court is to consider a number of private and public interest factors when analyzing a motion to transfer venue. The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other

---

[8] 28 U.S.C. § 1404(a).

5

practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG,* 371 F.3d 201, 203 (*Volkswagen I* ) (5th Cir. 2004). The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems regarding conflicts of law or the application of foreign law. *Id.* A plaintiff's choice of venue is not a distinct factor in the analysis, but "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Volkswagen II*, 545 F.3d at 311. The parties do not dispute that the lawsuit could have been filed in the Western District of Michigan. Thus, the Court must determine whether, in the interests of justice, the private and public interest factors support a transfer to the Western District of Michigan.

*Private Interest Factors*

i. Relative Ease of Access to Sources of Proof

In patent cases, "the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009). The preferred forum is "the center of gravity of the accused activity," including the accused product's "testing, research, and production as well as the place where the marketing and sales decisions occurred." *Raz Imports, Inc. v. Luminara Worldwide, LLC*, No. 3:15-CV-02223-M, 2015 WL 6692107, at *5 (N.D. Tex. Nov. 3, 2015) (Lynn, J.) (citing *Minka Lighting, Inc. v. Trans Globe Imports, Inc.*, 2003 WL 21251684, at *3 (N.D. Tex. May 23, 2003) (Fish, J.).

Here, Irwin's sources of proof are located either in or proximate to the Western District of Michigan. Irwin's headquarters, along with almost all its physical documents and files related

to the testing, research, production, marketing, and sales of the accused products, are located in Grand Rapids, Michigan.[9] Irwin also maintains a small number of relevant documents in Altamont, Illinois, which is approximately 300 miles closer to Grand Rapids than to Dallas. Further, the backs, seats, and engines of the accused product are manufactured by 21st Century Plastics Corporation in Potterville, Michigan, which is within 100 miles of the Western District of Michigan.[10] In addition, certain components of the Solara seating system, one of the seating systems in question in this case, are manufactured by Irwin in Grand Rapids.

Plaintiffs do not dispute the aforementioned facts. Instead, they argue the first factor weighs against transfer because the infringing product is present in the Northern District of Texas at several locations, and Camatic Seating's business records are all located in this district. However, the accused product has been installed in numerous stadiums nationwide, both in and outside of the Northern District of Texas, so the fact that it has been installed here does not weigh for or against transfer. Although Camatic Seating has some records in this district, Irwin has presented more substantial evidence that relevant documents and activities exist or have occurred in the Western District of Michigan than Camatic does for the Northern District of Texas. Thus, the first private interest factor weighs in favor of transfer.

      ii.      Availability of Compulsory Process to Secure the Attendance of Witnesses

A party seeking transfer must "identify the key witnesses and general content of their testimony." *Sargent v. Sun Trust Bank, N.A.*, No. Civ. 3:03-CV-2701, 2004 WL 1630081, at *3 (N.D. Tex. July 20, 2004). When a greater number of key non-party witnesses could be subpoenaed to attend a trial in the potential transferee forum, but not in the current forum, this

---

[9] *See* Declaration of Ray VanderKooi (ECF No. 37-2 at A2-4). Due to increasing technological advances, access to some types of proof presents a lesser inconvenience than it once did; however, the fact that technology reduces the inconvenience does not render this factor superfluous. *Volkswagen II*, 545 F.3d at 315.
[10] Declaration of Ray VanderKooi (ECF No. 37-2 at A3).

7

factor favors transfer. *See Internet Mach. LLC v. Alienware Corp.*, No. 6:10-CV-023, 2011 WL 2292961, at *6 (E.D. Tex. June 7, 2011). A district court may subpoena a non-party witness if he or she lives within the district or if the trial is "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c). Convenience of witnesses is the most important factor in considering transfer, and the "convenience of the non-party witnesses is accorded the greatest weight." *Minka Lighting, Inc. v. Trans Globe Imports, Inc.*, No. 3:02-CV-2538, 2003 WL 21251684, at *2 (N.D. Tex. May 23, 2003).

In their initial disclosures, both parties listed the same two witnesses who are subject to the Western District of Michigan's subpoena power: Graham Irwin and Bruce Cohen, employees of Irwin who it was said likely have discoverable information about the '858 Seating System Patent, the development and sale of the accused Solara and Integra seating systems,[11] Irwin's communications with Camatic, and Irwin's history and revenues. Irwin also identified Ray VanderKooi as its employee, located in Grand Rapids, who has knowledge similar to that of Graham Irwin and Bruce Cohen. Further, Irwin identified two other potential third-party witnesses subject to the Western District of Michigan's subpoena power: Herman Miller, Inc. and 21st Century Plastics Corp. Irwin asserts that Herman Miller, Inc. created one of Irwin's primary prior art references, is implicated in Irwin's claimed invalidity combinations, and has other discoverable information about the prior art. 21st Century Plastics Corp. manufactures portions of the accused product and likely has documents and information about that manufacture.[12]

---

[11] Solara and Integra are two different types of seating systems sold by Irwin.
[12] Irwin also alleges there are three non-party prior art witnesses within the subpoena power of the Western District of Michigan: Gregory Allison, from Kego Harbor, Michigan; Michael E. Phillips, from Jenison, Michigan; and Richard Magnuson, from Kentwood, Michigan.

Camatic does not name any third-party witness subject to the subpoena power of this Court. Camatic cites Ken Griffiths, Camatic Seating's Senior Vice President and Rule 30(b)(6) representative, as a witness who is subject to this Court's subpoena power, whose potential testimony allegedly relates to "Camatic's business operations, damages, and technical expertise."[13] Camatic also cites four of its Texas employees who are subject to this Court's subpoena power, but whose potential testimony is unstated. There are substantially fewer Camatic employees in Texas than there are Irwin employees in the Western District of Michigan. Because the Western District of Michigan may issue compulsory process on more witnesses and more pertinent sources of proof than can this Court, the second private interest factor weighs in favor of transfer.

      iii.    Cost of Attendance for Willing Witnesses

Irwin also notes three non-party witnesses who reside in cities significantly closer to Grand Rapids than Dallas. Max Tipton and Wilmer Schultz are from Pennsylvania, and allegedly may have discoverable information as inventors of a patent asserted as a prior art reference. Norman Foster, from New York, may have discoverable information as the designer of another piece of prior art. In addition, two of the three attorneys who prosecuted the '858 Seating System Patent are located significantly closer to Grand Rapids than to Dallas, including Edwin Schindler, who works in Huntington, New York, and David Frey, who works in Indianapolis, Indiana. Thomas Belush works in Beaverton, Oregon, which is approximately 100 miles closer to Dallas than Grand Rapids.[14]

Camatic argues there are no direct flights from Beaverton or Indianapolis to Grand Rapids, so it is more convenient for Belush and Frey to travel to Dallas. Although Camatic cites

---

[13] Plaintiffs' Initial Disclosures (ECF No. 37-2 at A99).
[14] Neither party provides more than a cursory description of what domestic non-party witnesses would testify.

9

no authority that a difference in availability of direct or connecting flights should be considered in a venue analysis, the Court concludes that for at least four of these six witnesses, Grand Rapids is likely more convenient.[15]

Camatic argues the third private interest factor further weighs against transfer, because it is inconvenient for witnesses from Australia, England, France, and Japan to catch a direct flight to Dallas rather than take an additional connecting flight to Grand Rapids. Camatic's theory is contradicted by *In re Genentech, Inc.*, in which the Federal Circuit noted that overseas witnesses are "required to travel a significant distance no matter where they testify," so additional travel within the United States is not significant to a transfer analysis. 566 F.3d at 1344. Because the Western District of Michigan is more convenient for the majority of the parties' domestic witnesses, and foreign witnesses' travel does not impact the transfer analysis,[16] this factor favors transfer.[17]

    iv.    All Other Practical Problems

The fourth private interest factor is a catch-all consideration that includes all other problems which encourage easy, expeditious, and inexpensive trials. Camatic argues the current stage of litigation in this Court weighs against transfer. However, the case is in its early stages, as fact discovery has not begun and claim construction has not occurred. Thus, the Court finds the fourth private interest factor to be neutral.

---

[15] For example, driving from Indianapolis to Grand Rapids is also a plausible less costly alternative.
[16] The parties' initial disclosures list different locations for Adam and David Fisher, the inventors of the patent in suit. Irwin lists an Australia address, while Camatic lists an Illinois address. Camatic's briefing states the Fishers reside in Australia. The parties do not explain this discrepancy. If the patent inventors reside in Australia, this fact would not affect the transfer analysis. However, if the Fishers are located in Illinois, this would favor transfer.
[17] Irwin argues that it has identified more witnesses closer to Grand Rapids than Dallas, and therefore transfer will result in less expense and lead to live testimony as opposed to deposition testimony. Although live testimony is preferable to deposition testimony, a substantial number of witnesses would still have to travel to Grand Rapids.

*Public Interest Factors*

      i.      Administrative Difficulties Flowing From Court Congestion

The first public interest factor evaluates the comparative administrative difficulties due to court congestion in the potential venues. The parties cite competing statistics relating to court congestion. Camatic argues the median time to trial for civil actions in the Western District of Michigan is significantly longer than the median time to trial in the Northern District of Texas. Irwin responds that almost ten times as many civil cases have been pending for more than three years in the Northern District of Texas than in the Western District of Michigan. Case-disposition statistics that do not unbundle the detail of the older cases "may not always tell the whole story." *Genentech*, 566 F.3d at 1347.

The Court notes the Northern District of Texas has one-third of its active judgeships vacant, including two in the Dallas Division. However, the Western District of Michigan has one-fourth of its active judgeships vacant. The vacancies in the Northern District of Texas have the potential to interfere with the expeditious and inexpensive disposition of the case, due to delay associated with judicial caseloads, but the Court believes those vacancies will be filled shortly. Given the time to disposition and the number of vacancies, the Court finds the first public interest factor to be neutral.

      ii.      Local Interest in Having Localized Interests Decided at Home

The Court's analysis of the public interest factors is primarily directed to the second factor: the local interest in having localized interests decided at home. *Volkswagen II*, 545 F.3d at 315. This factor "generally favors the venue where the acts giving rise to the lawsuit occurred." *Metromedia Steakhouses Co. v. BMJ Foods P.R., Inc.*, 3:07-CV-2042-D, 2008 WL 794533, at *3 (N.D. Tex. Mar. 26, 2008). The local interest in deciding local issues at home favors transfer to a

venue that will vindicate such an interest. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981).

Irwin is headquartered in Grand Rapids, Michigan, where it has over 350 employees.[18] 21st Century Plastics Corp., also located in the Western District of Michigan, manufactures multiple components of the accused product. Although Camatic has had an office in the Northern District of Texas for a decade, only four Camatic employees work in Texas, and none of Camatic's manufacturing occurs in Texas. Although the alleged infringing product has been sold in the Northern District of Texas, it is also in various other locations around the country, so this does not affect the Court's analysis.

Irwin has a substantially larger presence in Michigan than Camatic does in Texas, and parts of the accused product are manufactured in Michigan, where the manufacturer resides. The Western District of Michigan has a more "significant interest in whether local manufacturers will be able to continue producing products…manufactured locally in facilities that employ its denizens and impact the local economy." *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC*, 3:09-CV-0488-D, 2009 WL 2634860, at *8 (N.D. Tex. Aug. 26, 2009). Therefore, the second public interest factor weighs heavily in favor of transfer.

### iii. Familiarity of the Forum with the Law that Will Govern the Case

Plaintiffs allege only patent claims. Both the Northern District of Texas and the Western District of Michigan are "equally capable of construing and applying patent law." *Raz Imports*, 2015 WL 6692107, at *8. Therefore, the third public interest factor is neutral.

---

[18] Irwin has been in Grand Rapids, Michigan for over a century.

iv.  Avoiding Conflict of Laws

The fourth public interest factor considers the avoidance of unnecessary problems of conflicts of law or the application of foreign law. Both federal district courts are of equal jurisdiction, and the national patent system, where all appeals go to the Federal Circuit, eliminates the risk of conflicting circuit precedent. *Id*. at *8. Thus, the fourth public interest factor is neutral.

### III. Conclusion

For the reasons stated above, Defendant's Motion to Dismiss Camatic Seating for Lack of Standing is **DENIED**. Four of the public and private interest factors weigh in favor of transfer, and none weigh against transfer. Therefore, Defendant's Motion to Transfer Venue is **GRANTED**. The Clerk is directed to transfer this case promptly to the United States District Court for the Western District of Michigan.

**SO ORDERED**.

May 31, 2017.

_____
**BARBARA M. G. LYNN**
**CHIEF JUDGE**