UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAMATIC PROPRIETARY LIMITED
and CAMATIC SEATING, INC.,

       Plaintiffs,

v.

IRWIN SEATING COMPANY,

       Defendant.
_____/

CASE NO. 1:17-CV-492

HON. ROBERT J. JONKER

## CLAIM CONSTRUCTION MEMORANDUM OPINION AND ORDER

### INTRODUCTION

This is a patent infringement case. Camatic Proprietary Limited and Camatic Seating, Inc. (collectively, "Camatic") allege that Irwin Seating Company ("Irwin") is infringing Camatic's U.S. Patent No. 7,073,858 ("the '858 Patent"). Irwin denies infringement and asserts that the '858 Patent is invalid. Both companies work in the seating field. (ECF No. 39, PageID.1108-1109.) The patent at issue in this case relates to seating systems used in sports stadiums, among other uses. (*Id.*) Camatic submits one term of the '858 Patent for construction, and argues that plain and ordinary meaning is enough for everything else. Irwin submits fourteen terms for construction. (ECF No. 58-1.) The terms Irwin identifies for construction fall within three categories: (1) terms Irwin asserts invoke means-plus function under 35 U.S.C. § 112; (2) terms Irwin asserts call for construction beyond the plain and ordinary meaning; and (3) phrases Irwin alleges are indefinite. (*Id.*) The Court has heard oral argument on the parties proposed claims constructions. (ECF No. 94.) This Claims Construction Memorandum contains the Court's construction of the disputed terms.

# CLAIM CONSTRUCTION PRINCIPLES

When the meaning of a claim's language is disputed, the court must construe the claim as a matter of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370, 116 S. Ct. 1384 (1996). Proper claim construction begins with the language of the claims themselves. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "'In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to particularly point[] out and distinctly claim[] the subject matter which the patentee regards as his invention. 35 U.S.C. § 112, ¶ 2.'" *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1298 (Fed. Cir. 2003) (quoting *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) (internal quotations omitted)). The Court must give claim terms the ordinary and customary meaning ascribed to them by "a person of ordinary skill in the art in question at the time of the invention, i.e, as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).

When interpreting a claim as understood by a person of ordinary skill in the art, the court first examines the intrinsic evidence before it, which includes not only the claim language, but also the written description and the prosecution history of the patent. *Phillips*, 415 F.3d at 1319. Terms that have a plain and ordinary meaning typically do not need to be construed, as their meaning is clear from the term itself. *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010). A court considers the written description "because it is relevant not only to aid in the claim construction analysis, but also to determine if the presumption of ordinary and customary meaning is rebutted." *Brookhill-Wilk 1, LLC*, 334 F.3d at 1298. In fact, the specification is usually "the

single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582. The prosecution history may also be considered to "inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips*, 415 F.3d at 1317.

A court may also consider extrinsic evidence, such as dictionaries, treatises, and expert or inventor testimony, in construing patent claims. *See id.* Technical dictionaries may help a court understand "the meaning of particular terminology to those of skill in the art of the invention." *Id.* at 1318. Likewise, expert testimony may be useful for explaining the technology at issue and how the particular invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of ordinary skill in the art, or to establish that a particular claim in the patent or in prior art has a particular meaning in the pertinent field. *See id.*

While a court may consider both intrinsic and extrinsic evidence, intrinsic evidence is generally more reliable and thus generally entitled to greater weight when construing a claim term. *See id.* at 1320-21. What ultimately controls, however, is the language of the claims themselves: "[T]he court's focus [must] remain[] on understanding how a person of ordinary skill in the art would understand the claim terms." *Id.* at 1323. Thus, "'[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.'" *Id.* at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1995)).

## CLAIM ANALYSIS

1. **MEANS-PLUS-FUNCTION**

The Patent Act provides that "[a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112(f) (2017). This provision strikes "a balance in allowing patentees to express a claim limitation by reciting a function to be performed rather than by reciting structure for performing that function, while placing specific constraints on how such a limitation is to be construed, namely, by restricting the scope of coverage to only the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof." *Williamson v. Citrix Online, LLC*, 792 F.3d. 1339, 1347 (Fed. Cir. 2015). In determining whether a particular limitation is a means-plus-function term, "the essential inquiry is not merely the presence or absence of the word 'means' but whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Id.* at 1348. The presence or absence of the word "means" still affects the analysis: when the claim uses the word "means," there is a rebuttable presumption that § 112(f) applies. *Id.* Conversely, when the word "means" does not appear, there is a rebuttable presumption that § 112(f) does not apply. *Id.* "When a claim lacks the word 'means,' the presumption can be overcome and § 112[f] will apply if the challenger demonstrates that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Id.* (internal quotation omitted).

Irwin identifies four claim terms as subject to a means-plus-function construction under 35 U.S.C. § 112(f). Camatic contends that section 112(f) does not apply to any of these terms. The Court addresses the claim terms at issue in turn.

| '858 Claim Term (Asserted Claims) | Camatic | Irwin |
|---|---|---|
| **"connector"** (claims 13, 20, 22, 33, 36) | 35 U.S.C. § 112 (f) does not apply, and no construction is necessary. This term should be interpreted according to its plain and ordinary meaning as "something that connects." | 35 U.S.C. § 112(f) applies.<br><br>Function: connecting a bracket, a beam, and a bolt.<br><br>Structure: an object, like connector 30, that (i) is shaped to be inserted into a channel, (ii) includes an upwardly facing recess to receive the head of a bolt; and (iii) includes an aperture therethrough to receive the shaft of the bolt. |

The Court agrees with Camatic and finds that a means-plus-function analysis under 35 U.S.C. § 112(f) does not apply to the term "connector." The word "means" does not appear in the claim recitations, and so there is a rebuttable presumption that section 112(f) does not apply. *Williams*, 792 F.3d at 1347. Irwin has not rebutted the presumption, because it has not demonstrated that the claim term "fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Id.* (internal quotation omitted). A person of ordinary skill in the art would understand the term as used in the '858 patent to connote structure.

The word in context connotes structure by describing connectors in relationship to other structures; the word is not simply describing a function disembodied from structure. Claim 13 recites:

> a plurality of **connectors**, each of the **connectors** being mountable to a respective one of the brackets;
> an elongate beam adapted to be mounted to the **connectors** in a general horizontal orientation, the beam including a lower portion defining a channel, the channel being shaped to slidably receive the **connectors** from an end of the beam . . . At least one seat support, each seat support including a clamp portion adapted to be removably mounted . . . so that the seat base can be mounted . . . free from interference with **connectors** . . . .

(ECF No. 55-2, PageID.2768). In pertinent parts, Claim 20 recites "a first track portion configured to be secured to a series of fixed **connectors** at any position along a length of the beam . . . " (*Id.*); Claim 22 recites "a channel . . . shaped to cooperatively receive the series of **connectors**[]" (*Id.*); and Claim 33 recites "a first track portion configured to be secured to a series of fixed **connectors** at any position along a length of the beam . . . ." (*Id.*, PageID.2769.) Irwin's proposed application of section 112(f) would strip "connector" from its context in an effort to make it a purely functional description, rather than one of several structural components that together form the claimed invention. The claim term needs no construction beyond its plain and ordinary meaning of "something that connects."

| '858 Claim Term (Asserted Claims) | Camatic | Irwin |
|---|---|---|
| "fastener" (claims 13, 27, 28) | 35 U.S.C. § 112(f) does not apply, and no construction is necessary. This term should be interpreted according to its plain and ordinary meaning as "something that fastens." | 35 U.S.C. § 112(f) applies.<br><br>Function: fastening a clamp portion of a seat support to the top and undercut surfaces of an overhang of a beam. Structure: an object, like toggle fastener 72, that (i) includes a threaded aperture that receives a bolt, (ii) is selectively moveable from a position where it is free of the beam to a position such that the fastener fits under a nose or overhang of the beam, and (iii) rotates to lock the seat into position. |

The same basic analysis applies to the claim term "fastener" as to the claim term "connector." Irwin asserts that section 112(f) applies, but the language of the claim in context reflects otherwise. The word "means" does not appear in the claims at issue. Irwin fails to rebut the presumption that section 112(f) does not apply. As with "connector," the claims recite sufficiently definite structure and do not recite any function without reciting sufficient structure for performing that function. *See Williams*, 792 F.3d at 1348. Claim 13 recites "the support further including movable **fastener** mounted to return such that the **fastener** grips over the front overhang in contact with the front undercut surface." (ECF No. 55-2, PageID.2768.) Claim 27 recites "seating system of claim 20, further including a **fastener** that is mounted to the clamp portion such that the **fastener** can selectively secure under the overhang opposite the overhang engaged by the return portion." (*Id.*) Claim 28 recites "seating system of claim 27, wherein the overhang to be gripped by the **fastener**

7

has an angular cross-sectional profile." (*Id.*) To apply section 112(f) as Irwin suggests would strip the term from its context. "Fastener" connotes sufficient structure in context to one of ordinary skill in the art, and section 112(f) does not apply. No construction is needed beyond the plain and ordinary meaning: "something that fastens."

| '858 Claim Term (Asserted Claims) | Camatic | Irwin |
|---|---|---|
| "seat pivot mechanism" (claims 19, 31)  "seat rotation mechanism" (claim 33) | 35 U.S.C. § 112(f) does not apply, and no construction is necessary. These terms should be interpreted according to their plain and ordinary meanings as "a mechanism that pivots a seat" and "a mechanism that rotates a seat," respectively. | 35 U.S.C. 112(f) applies.  Function: pivoting or rotating a seat. Structure: no corresponding structure disclosed. |

The Court also finds that 35 U.S.C. § 112(f) does not apply to "seat pivot mechanism" and "seat rotation mechanism," again based on the plain language of the claims in context. The term "means" does not appear, creating a rebuttable presumption that section 112(f) does not apply. Claim 19 recites "wherein each of the supports includes a **seat pivot mechanism**, the seat portion being mounted to the respective **seat pivot mechanisms**." (ECF No. 55-2, PageID.2768.) Claim 31 recites "wherein each of the supports includes a seat pivot mechanism, the seat portion being mounted to the respective **seat pivot mechanisms**." (*Id.*) Claim 33 recites "each of the supports having: (a) a clamp portion with a return portion shaped to cooperatively fit over the top of the beam and under the rear overhang at any position along the length of the beam; (b) a **seat rotation mechanism**; and (c) a support member . . ." (*Id.*, PageID.2769.) In each instance, the claim recites

sufficiently definite structure and does not recite any function without reciting sufficient structure for performing that function. *See Williams*, 792 F.3d at 1348. The specification provides additional disclosures about the structural components of each mechanism. No construction is needed beyond the the plain and ordinary meanings of "a mechanism that pivots a seat" and "a mechanism that rotates a seat."

| '858 Claim Term (Asserted Claims) | Camatic | Irwin |
|---|---|---|
| "toggle" (claim 35) | 35 U.S.C. § 112(f) does not apply. Camatic proposes that "toggle" be construed to mean "a piece or device for holding or securing." This term is not indefinite. | Indefinite. Alternatively, 35 U.S.C. 112(f) applies. <u>Function</u>: to lock the support at a desired position along the beam. <u>Structure</u>: "an object, like toggle fastener 72, that (i) is selectively moveable from a position where it is free of the beam to a position such that the fastener fits under a nose or overhang of the beam, (ii) includes a threaded aperture, and (iii) rotates to lock the seat into position. |

The Court rejects Irwin's argument offered in the alternative[1] that 35 U.S.C. § 112(f) applies to "toggle" in claim 35. The word "means" does not appear, and Irwin has not rebutted the presumption that section 112(f) does not apply. *See Williams*, 792 F.3d at 1348. "Toggle" is a sufficiently definite structure and does not recite a function without referring to a sufficiently definite

---

[1] The Court addresses Irwin's principal argument about "toggle" in the section on indefiniteness.

9

structure. Claim 35 recites the seating system of claim 33, "wherein the beam further includes a front overhang that extends generally along a front side of the beam, and wherein the clamp portion includes a **toggle** that is movable under the front overhang to lock the support at a desired position along a length of the beam." (ECF No. 55-2, PageID. 2769.) "Toggle" appears as a structure in relationship with other structures. Figure 8 illustrates the toggle structure. (ECF No. 55-2). The prosecution history reflects that the Patent Office has twice cited the Merriam-Webster dictionary definition of "toggle fastener" as a "piece or device for holding or securing; . . . a crosspiece attached to the end of or to a loop in something usually to prevent slipping, to serve in twisting or tightening, or to hold something attached." (ECF No. 55-3, PageID.45, 51.) The Court construes the term as Camatic proposes: "a piece or device for holding or securing."

## 2. PLAIN AND ORDINARY MEANING

"Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Claim construction is required only "when the meaning or scope of technical terms and words of art is unclear and in dispute and requires resolution to determine" the issue before the Court. *Id.*; *see also Eli Lilly and Co. v. Aradigm Corp.*, 376 F.3d 1352, 1360 (Fed. Cir. 2004). The Court of Federal Claims has found that "[i]t follows, a fortiori, that if a claim element is clear on its face, or at least if the parties' constructions would serve to obfuscate or warp its meaning, then the court may decline to construe the element." *Hastings v. United States*, 78 Fed. Cl. 729, 733 (Fed. Cl. 2007). The Federal Circuit instructs that "[i]f the claim language is clear on its face, then our consideration of the rest of the intrinsic evidence is restricted

to determining if a deviation from the clear language of the claims is specified." *Interactive Gift Exp., Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001).

"When the parties raise an actual dispute regarding the proper scope of [claims asserted to be infringed], the court, not the jury, must resolve that dispute." *O2 Micro International, Ltd. v. Beyond Innovation Technology Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). "A determination the a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on the terms 'ordinary' meaning does not resolve the partes' dispute." *Id.* at 1361; see also *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314 (2016). In *Eon*, the appellate court found that the trial court erred by declining to construe the terms 'portable' and 'mobile' and instructing the jury to give the terms their plain and ordinary meaning. *Eon*, 815 F.3d at 1318-1320. The appellate court emphasized that the parties disputed the scope of the claim terms and that it was error for the district court to leave the question of claim scope unanswered and for the jury to decide. *Id.* at 1319.

Irwin identifies five terms it contends need construction. Camatic argues that the plain and ordinary meaning suffices in each case. The Court agrees with Camatic. In each case, the plain and ordinary meaning of the term is sufficient. Moreover, the constructions that Irwin proposes would in each instance add conditions that are not in the claim language, or impose limits that are not part of the claim language.

| '858 Claim Term (Asserted Claims) | Camatic | Irwin |
|---|---|---|
| "channel being shaped to slidably receive connectors from an end of the beam" (claim 13) | Camatic does not believe that any construction is necessary. This phrase should be interpreted according to its plain and ordinary meaning. | A channel with a cross section shaped to slidably accept and retain connectors from the end of the beam. |

The Court finds the plain and ordinary meaning sufficient. Moreover, Irwin's proposed construction "serves to obfuscate or warp its meaning" by adding conditions not present in the plain and ordinary meaning of the phrase. *Hastings v. United States*, 78 Fed. Cl. 729, 733 (Fed. Cl. 2007). In particular, Irwin adds a retention element that is not part of the claim and needlessly limits its scope. No construction is needed beyond the plain and ordinary meaning.

| '858 Claim Term ("Asserted Claims" | Camatic | Irwin |
|---|---|---|
| "undercut surface" (claim 13) | Camatic does not believe that any construction is necessary. This term should be interpreted according to its plain and ordinary meaning as "a surface formed by an absence of material from the lower part of something." | A surface resulting from an "undercut," defined as "to cut away material from so as to leave a portion overhanging." |

The Court finds the plain and ordinary meaning sufficient. Irwin's proposed construction "serves to obfuscate or warp its meaning," again imposing conditions not present in the plain and ordinary meaning of the term. *Hastings v. United States*, 78 Fed. Cl. 729, 733 (Fed. Cl. 2007). In particular, Irwin tries to limit the term to an "undercut surface" created in one particular process.

Nothing in the claim language or specification supports this. No construction is needed beyond the term's plain and ordinary meaning as "a surface formed by an absence of material from the lower part of something."

| '858 Claim Term (Asserted Claims) | Camatic | Irwin |
|---|---|---|
| "removably mounted . . . so that the seat base can be mounted at any position along a length of the beam" (claim 13)<br><br>"removable . . . to facilitate repositioning along the beam after installation" (claim 20) | Camatic does not believe that any construction is necessary. These phrases should be interpreted according to their respective plain and ordinary meanings. | The term in claim 13 should be construed consistently with "removable . . . to facilitate repositioning along the beam after installation" as:<br>  Mounted such that the seats may be loosened and moved along the beam without disconnecting from the beam.<br><br>The term in claim 20 should be construed consistently with "removably mounted . . . so that the seat base can be mounted at any position along a length of the beam" as:<br>Mounted such that the seats may be loosened and moved along the beam without disconnecting from the beam. |

The Court finds the plain and ordinary meaning sufficient. Irwin's proposed construction "serves to obfuscate or warp [the] meaning" of each of the phrases, again by narrowing the plain and ordinary meaning of each phrase. *Hastings v. United States*, 78 Fed. Cl. 729, 733 (Fed. Cl. 2007). There is nothing in the claim language to support limiting it to applications "without disconnecting."

Such a construction would certainly help Irwin's non-infringement argument, but Camatic's claim is broad enough in its plain and ordinary meaning to cover removable mountings that disconnect from a beam as well as those that don't. No construction is needed beyond the plain and ordinary meanings.

| '858 Claim Term (Asserted Claims) | Camatic | Irwin |
| --- | --- | --- |
| "are unitarily formed" (claim 21) | Camatic does not believe that any construction is necessary. This phrase should be interpreted according to its plain and ordinary meaning as "formed of a unit." | Are formed together, as one piece. |

The Court finds the plain and ordinary meaning of the term sufficient. Once again, Irwin warps the meaning by introducing a more limiting concept than the claim allows. Nothing in the claim language requires "one piece." No construction is needed beyond the plain and ordinary meaning of "formed of a unit."

| '858 Claim Term (Asserted Claims) | Camatic | Irwin |
| --- | --- | --- |
| "selectively secure" (claim 27) | Camatic does not believe that any construction is necessary. This term should be interpreted according to its plain and ordinary meaning as "secure in a selective manner." | The fastener is structured so that it can, but need not, secure to the overhang. |

The Court finds the plain and ordinary meaning of the term sufficient. There is no need to construe the term. Irwin's proposed construction "serves to obfuscate or warp its meaning" by needlessly limiting the plain and ordinary meaning of the term. *Hastings v. United States*, 78 Fed. Cl. 729, 733 (Fed. Cl. 2007). The claim language simply requires "selectively secur[ing] under the overhang"; it says nothing one way or the other about how the securing occurs. The Court declines to construe the term beyond its plain and ordinary meaning of "secure in a selective manner."

3. **INDEFINITENESS**

Under the Patent Act, a patent specification must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which inventor or joint inventor regards as the invention." 35 U.S.C. § 112(b) (2017). The Supreme Court has held that "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014). "The definiteness requirement, so understood, mandates clarity, while recognizing that absolute precision is unattainable." *Id.*

The principal cases on which Irwin relies to support its position differ markedly from this case. Unlike the '858 patent, none of the patents in those cases pertain to a purely mechanical apparatus. All involve more intangible inventions and concepts. The patents at issue in *O2 Micro Intern. Ltd.* pertain to "inverter controllers," which "convert low voltage direct current ("DC") into higher voltage alternating current ("AC"). *O2 Micro Intern. Ltd. v. Beyond Innovation Technology Co., Ltd.*, 521 F.3d 1351, 1354 (2008). The patents-in-suit describe "a converter circuit that employs a feedback control loop" to control power delivery. *Id.* The patents at issue in *Every Penny Counts,*

*Inc.*, involved a method for apportioning cash payments. *Every Penny Counts, Inc. v. American Express Co.*, 563 F.3d 1378, 1381-82 (2009). The dispute centered on the meaning of "excess cash," an abstract concept. *Id.* In *Eon Corp. IP Holdings*, the patents-in-issue all related to "a two-way interactive communication network system for enabling communications between local subscribers and a base station." *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1316 (2016). The principles of indefiniteness still apply, of course. But as applied to the invention in this case, no term is fatally indefinite.

Irwin challenges several claim terms as indefinite. The Court addresses these claims in turn.

| '858 Claim Term (Asserted Claims) | Camatic | Irwin |
|---|---|---|
| "projects in a first direction" (claim 13)  "generally opposite direction" (claim 13) | The phrases are not indefinite. Camatic does not believe that any construction is necessary. Each phrase should be interpreted in accordance with its plain and ordinary meaning. | Indefinite. |

Neither phrase is indefinite in context. The claim recites a "beam including an elongate upper portion having a rear overhang with a rear undercut surface that **projects in a first direction** and a front overhang having an undercut surface that extends in **a generally opposite direction** from the rear overhang." (ECF No. 55-2, PageID.2768.) The specification teaches the same thing. It details "a rear overhang with a rear undercut surface that projects in a first direction and a front overhang with an undercut surface that extends in a generally opposite direction from the rear overhang." (*Id.*, PageID.2764.) The phrases are reciprocals of each other; each provides context for

the other, particularly when coupled with the embedded references to a "rear" and "front" overhang. With respect to the claimed invention here, the terms are sufficiently definite. The hypotheticals Irwin provides ignore the overall context of the specification and claim language in which the challenged terms are embedded.

| '858 Claim Term (Asserted Claims) | Camatic | Irwin |
|---|---|---|
| "[that is] cooperatively shaped" (claim 13)  "cooperatively shaped [return portion]" (claim 29)  "shaped to cooperatively fit" (claims 20, 33)  "shaped to cooperatively receive" (claim 22) | None of the phrases are indefinite. Camatic does not believe that any construction is necessary. "Cooperatively shaped" should be interpreted according to its plain and ordinary meaning as "having a shape that corresponds." "Shaped to cooperatively fit" should be interpreted according to its plain and ordinary meaning as "having a shape that corresponds to fit." "Shaped to cooperatively receive" should be interpreted according to its plain and ordinary meaning as "having a shape that corresponds to receive" | The phrases are indefinite. |

The phrases are not indefinite in context. Claim 13 recites "the clamp portion including a return portion that is **cooperatively shaped** to fit against the upper portion and over the rear overhang in contact with the undercut surface. . . ." (ECF No. 55-2, PageID.2768). Claim 29 recites "the seating system of claim 27, wherein the overhang to be gripped by the **cooperatively shaped**

17

return portion has a rounded cross-sectional profile." (*Id.*) The phrase reasonably informs those skilled in the art of what is claimed, again considering the overall context of the specification and claim language. The phrase is sufficiently definite and needs no construction beyond its plain and ordinary meaning as "having a shape that corresponds." Similarly, claim 20 recites "a pair of overhangs that extend outwardly along opposite elongate sides of the beam and the clamp portion of the support includes a return portion **shaped to cooperatively fit** over one of the overhangs." (ECF No. 55-2, PageID.2768.) Claim 33 recites "a clamp portion with a return portion **shaped to cooperatively fit** over a top of the beam. . . . ." (*Id.*, PageID.2769.) This phrase also reasonably informs those skilled in the art of what is claimed, considering the overall context of the specification and claim language. The phrase is sufficiently definite and needs no construction beyond its plain and ordinary meaning as "having a shape that corresponds to fit." The same analysis applies to "shaped to cooperatively receive." Claim 22 recites "[t]he seating system of claim 20, wherein the first track portion forms a channel, the channel **shaped to cooperatively receive** the series of connectors." The phrase reasonably informs those skilled in the art of what is claimed, considering the overall specification and claim language. The phrase is sufficiently definite and needs no construction beyond its plain and ordinary meaning as "having a shape that corresponds to receive."

| '858 Claim Term (Asserted Claims) | Camatic | Irwin |
|---|---|---|
| "angular cross-sectional profile" (claim 28)  "rounded cross-sectional profile" (claim 29) | Neither term is indefinite. Camatic does not believe that any construction is necessary. The terms should be interpreted according to their plain and ordinary meanings as "a cross section that includes an angle," and "a cross section that includes a round or curved shape," respectively. | Indefinite. |

Neither phrase is indefinite in context. Claim 28 recites the "seating system of claim 27, wherein the overhang to be gripped by the fastener has an **angular cross-sectional profile**." (ECF No. 55-2, PageID.2768.) This term is easily understood, and even more so in view of Figure 5, which offers a clear depiction. The same is true of Claim 29, which recites the "seating system of claim 27, wherein the overhang to be gripped by the cooperatively shaped return portion has a **rounded cross-sectional profile**." (*Id.*) The phrases are sufficiently definite and require no construction beyond their plain and ordinary meaning.

| '858 Claim Term (Asserted Claims) | Camatic | Irwin |
|---|---|---|
| "toggle" (claim 35) | This term is not indefinite. | Indefinite. |

"Toggle" is not indefinite in context. Claim 35 recites "a front overhang that extends generally along a front side of the beam, and wherein the clamp portion includes a **toggle** that is movable under the front overhang to lock the support at a desired position along the length of the

beam." (*Id.*, PageID.2769.)  As already discussed, the claim, specification, and prosecution history support the construction of "toggle" as "a piece or device for holding or securing."  The overall context of the specification and claim language make the term sufficiently definite.

## CONCLUSION

For these reasons, the Court concludes that the only term from the '858 Patent that requires construction is "toggle," which the Court construes as detailed above.  No construction beyond the plain and ordinary meaning is needed for any of the other terms Irwin identifies for construction.  Section 112(f) does not apply to any of the terms Irwin identifies for construction, and all of the terms Irwin challenges as indefinite are sufficiently definite.

Dated:     December 27, 2017             /s/ Robert J. Jonker
                                                  ROBERT J. JONKER
                                                  CHIEF UNITED STATES DISTRICT JUDGE